**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

v.

JOHN MICHAEL FOX,
    *Defendant-Appellee.*

No. 08-30445

D.C. No.
3:96-CR-00080-JKS

OPINION

Appeal from the United States District Court
for the District of Alaska
James K. Singleton, Senior District Judge, Presiding

Argued and Submitted
December 9, 2010—Seattle, Washington

Filed February 7, 2011

Before: Diarmuid F. O'Scannlain and Richard C. Tallman,
Circuit Judges, and Barry T. Moskowitz, District Judge.*

Opinion by Judge O'Scannlain

*The Honorable Barry T. Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

## COUNSEL

Kirby A. Heller, U.S. Department of Justice, Washington, D.C., argued the cause for the United States, and filed the briefs. Karen L. Loeffler, United States Attorney for the District of Alaska, and Stephan A. Collins, Assistant U.S. Attorney for the District of Alaska, were also on the briefs.

Kevin F. McCoy, Assistant Federal Defender, Anchorage, Alaska, argued the cause for the defendant-appellee, and filed the briefs.

## OPINION

O'SCANNLAIN, Circuit Judge:

We examine how much a sentence can be reduced based on a retroactive amendment to the Sentencing Guidelines.

I

In 1996, a federal grand jury issued a two-count indictment charging John Michael Fox with possessing crack cocaine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), and with carrying a .45 caliber handgun during and in relation to a drug crime, in violation of 18 U.S.C. § 924(c)(1). Fox entered into a plea agreement in which he pled guilty to the drug charge and, in exchange, the government dropped the gun charge.

The Sentencing Guidelines indicated that Fox should receive a prison term of 360 months to life. This calculation was based on the facts that Fox (1) possessed nearly two kilograms of crack cocaine, (2) committed his offense while possessing a gun, (3) exercised a leadership role in the offense, and (4) was in Criminal History Category IV. The district judge sentenced Fox to 360 months in prison, the low end of the Guidelines range. The judge noted, however, that he would have downwardly departed, had the then-mandatory Sentencing Guidelines allowed him to do so.

On June 30, 2008, after serving approximately 132 months in prison, Fox moved to reduce his sentence based on retroactive amendments to the Sentencing Guidelines that lowered the base offense levels for crack-cocaine offenses.[1] The dis-

---

[1] In 2007, the Sentencing Commission amended the Guidelines to reduce by two levels the base offense level associated with each quantity of crack cocaine. *See* U.S.S.G. Supp. App. C, Amdt. 706 (effective Nov. 1, 2007). In 2008, the Commission made that amendment retroactive. *See id.*, Amdt. 713 (effective Mar. 3, 2008).

trict court recalculated Fox's Guidelines range and found that his amended Guidelines range was 292-365 months. At the time, Ninth Circuit precedent held that *United States v. Booker*, 543 U.S. 220 (2005), which made the Guidelines advisory at initial sentencings, also allowed district courts to treat the Guidelines as advisory at sentence modification proceedings. *See United States v. Hicks*, 472 F.3d 1167, 1170 (9th Cir. 2007). Relying on *Hicks*, the district court determined that it was not bound by the Sentencing Commission's Policy Statement, which mandated that a sentence modification proceeding may not be used to reduce a sentence below the amended Guidelines range. *See* U.S.S.G. § 1B1.10(b)(2)(a) (policy statement).[2] Freed from the amended Guidelines, the district court determined that a downward departure was warranted based on a number of factors unrelated to the retroactive amendments to the Guidelines, such as Fox's good behavior in prison. The district court reduced Fox's sentence to time served (134 months)—just 37% of the original sentence and only 46% of the bottom of the amended Guidelines range.

On timely appeal, the government argued that *Hicks* misinterpreted *Booker*, and moved for initial hearing en banc so that *Hicks* could be overruled. The Ninth Circuit granted the petition for initial hearing en banc, *see United States v. Fox*, 583 F.3d 596 (9th Cir. 2009), but then stayed proceedings in this case in light of the then-pending Supreme Court case *Dillon v. United States*, 130 S. Ct. 2683 (2010), which was decided last June.

In *Dillon*, the Supreme Court explicitly rejected *Hicks* as "unpersuasive," concluding that sentence modification proceedings "do not implicate the interests identified in *Booker*."

---

[2]Because the citations for Sentencing Guidelines and Policy Statements are otherwise indistinguishable, we indicate Policy Statements in parenthesis following their citations and, in text, we refer to "U.S.S.G. § 1B1.10(b)" as "Policy Statement 1B1.10(b)."

*Dillon*, 130 S. Ct. at 2692-93. Accordingly, the Court held that nothing in *Booker* justifies a district court in ignoring Policy Statement 1B1.10. *See Dillon*, 130 S. Ct. at 2693.

After *Dillon*, the government moved for summary reversal of the district court's modification of Fox's sentence in this case. Fox opposed the motion, arguing that, although *Dillon* foreclosed his constitutional argument, a merits panel should still consider his alternative argument that his reduced sentence be affirmed on statutory grounds. Fox's statutory argument is that Policy Statement 1B1.10 is invalid because it was promulgated in violation of a number of procedural requirements. Because the statutory question was deemed worthy of consideration by a three-judge panel, the en banc Court vacated its order for initial hearing en banc, and the case was assigned to this panel. No further briefing was ordered.

## II

The Sentencing Reform Act of 1984 ("SRA"), 98 Stat. 1987, established the United States Sentencing Commission and authorized it to promulgate Sentencing Guidelines and to issue Policy Statements. *See* 28 U.S.C. §§ 991, 994(a). The SRA also charged the Commission with periodically reviewing and revising the Guidelines. *See id.* § 994(o). When an amendment reduces the Guidelines range for a given offense, the Commission must determine "in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." *Id.* § 994(u).

**[1]** When the Commission makes a Guidelines amendment retroactive, a district court is authorized to reduce an otherwise final sentence that was based on the amended provision.[3]

---

[3]This is an exception to the rule that "[a] federal court generally 'may not modify a term of imprisonment once it has been imposed.' " *Dillon v. United States*, 130 S. Ct. 2683, 2687 (2010) (quoting 18 U.S.C. § 3582(c)).

18 U.S.C. § 3582(c). But any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). The relevant Policy Statement, 1B1.10, makes clear that "proceedings under [section] 3582(c) do not constitute a full resentencing" and are intended only to adjust a sentence in light of a Guidelines amendment. U.S.S.G. § 1B1.10(a)(3) (policy statement). It instructs courts proceeding under section 3582(c)(2) to substitute the amended Guidelines range for the original Guidelines range, and then to "leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1) (policy statement). A court may then grant a reduction *within* the amended Guidelines range, but may not reduce the defendant's term of imprisonment "to a term that is less than the minimum of the amended guideline range." *Id.* § 1B1.10(b)(2)(A) (policy statement).

**[2]** Congress has instructed the Sentencing Commission that Guidelines are "for use of a sentencing court in determining the sentence to be imposed in a criminal case," including, inter alia, "a determination whether to impose . . . a term of imprisonment," and "a determination as to . . . the appropriate length of . . . a term of imprisonment." 28 U.S.C. § 994(a)(1)(A)-(B). Policy Statements, by contrast, deal with the "application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes" of sentencing. *Id.* § 994(a)(2).[4] Of particular relevance here, Congress specified that Policy Statements should define "the appropriate use of

---

[4] To be precise, section 994(a)(2) states that Policy Statements should "further the purposes set forth in [18 U.S.C. § 3553(a)(2)]." Section 3553(a)(2) sets forth the general purposes of sentencing. These purposes are: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

. . . the sentence modification provisions set forth in . . . 18 U.S.C. § 3582(c)." 28 U.S.C. § 994(a)(2)(C).

The Sentencing Commission must jump through more procedural hoops to issue a Guideline than to issue a Policy Statement. Most notably, when issuing Guidelines, the Sentencing Commission must comply with the Administrative Procedure Act's notice and comment provisions, *id.* § 994(x), and must submit the Guideline to Congress 180 days before it takes effect, along with a statement of the Commission's reasons for issuing the Guideline, *id.* § 994(p). Congress, of course, can override both Guidelines and Policy Statements by statute.

## III

### A

The Supreme Court explicitly rejected Fox's main argument—that Policy Statement 1B1.10(b) is invalid under *Booker*. Fox is thus left with the fallback argument that Policy Statement 1B1.10(b) performs the function of a Guideline, thereby circumventing the procedural requirements for promulgating a Guideline. Such reasoning directly conflicts with the statutory scheme enacted by Congress, which explicitly contemplates Policy Statements like 1B1.10(b).

As noted, Congress has defined a broad subject area that Policy Statements may appropriately govern and has specifically provided that Policy Statements may indicate "the appropriate use of . . . the sentence modification provisions set forth in . . . [18 U.S.C. § 3582(c)]." 28 U.S.C. § 994(a)(2)(C). This is consistent with section 3582(c) itself, which states that district courts "may not modify a term of imprisonment once it has been imposed," unless, inter alia, "such a reduction is consistent with applicable Policy Statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c).

**[3]** The Policy Statement here at issue, 1B1.10, performs a function that Congress explicitly contemplated Policy Statements would perform, viz., it clarifies "the appropriate use of . . . sentence modification" proceedings. 28 U.S.C. § 994(a)(2)(C). Indeed, it makes clear that the only "appropriate use" of sentence modification proceedings under section 3582(c) is to adjust a sentence in light of a Guidelines amendment, and that section 3582(c) cannot appropriately be used as a "full resentencing" that reconsiders a sentence based on factors unrelated to a retroactive Guidelines amendment. U.S.S.G. § 1B1.10(a)(3) (policy statement). In fact, Policy Statement 1B1.10 merely clarifies a point which was already discernable from the text and structure of 18 U.S.C. § 3582(c). *See Dillon*, 130 S. Ct. at 2691 ("Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding.").

B

Fox tries to avoid 1B1.10's clear statutory grounding by imagining restrictions on the use of Policy Statements that Congress has not imposed. He insists that Policy Statements may concern only the application of the Guidelines or the implementation of sentences, drawing a distinction between "actual guidelines" and the policy statements that "interpret" and "explain" them. This argument misrepresents 28 U.S.C. § 994(a)(2), which, as noted, posits that Policy Statements may regard the "application of the guidelines *or any other aspect of sentencing* or sentence implementation that in the view of the Commission would further the purposes" of sentencing, including "the appropriate use" of "the sentence modification provisions." *Id.* (emphasis added).

Next, Fox notes, correctly, that only Guidelines can advise district courts on "whether to impose . . . a term of imprisonment," and "the appropriate length of . . . a term of imprison-

ment." 28 U.S.C. § 994(a)(1)(A), (B). But Fox erroneously charges that Policy Statement 1B1.10 "determines the sentence to be imposed in a criminal case." It does not. Policy Statement 1B1.10 does not even apply until a sentence has already been imposed, at which point it merely limits the scope of sentence reduction proceedings, prohibiting district courts from using such proceedings to engage in plenary reconsideration of the sentences they already imposed.

Of course, Policy Statement 1B1.10 may affect the length of the sentence which a defendant ultimately serves. This is unremarkable, since procedural rules are always capable of affecting substantive outcomes. *See Hanna v. Plumer*, 380 U.S. 460, 468-69 (1965). Because Policy Statements, among other functions, interpret Guidelines, it is not surprising that they will, at times, affect the length of sentences. In fact, the Supreme Court has expressly held that Policy Statements may authoritatively determine the application of a particular Guideline, even where it affects the length of the defendant's sentence. *See Williams*, 503 U.S. 193, 201 (1992) ("Where, as here, a Policy Statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable Guideline. An error in interpreting such a Policy Statement could lead to an incorrect determination that a departure was appropriate."); *cf. Stinson v. United States*, 508 U.S. 36, 43 (1993) (holding that the Sentencing Commission's mere "commentary" is binding on federal courts, even where it affects whether the defendant is sentenced as a "career offender"). Although these decisions came in the pre-*Booker* context of mandatory Sentencing Guidelines, they still reflect post-*Booker* the Supreme Court's recognition that Policy Statements properly serve as interpretative authority controlling application of the Guidelines.

Fox also makes a constitutional avoidance argument, asserting that Policy Statements like 1B1.10 "raise serious separation of powers problems" by allowing the Sentencing Commission "to create new law, and even overrule court deci-

sions, without any democratic process or oversight." This argument conflicts with Supreme Court precedent, which has upheld the SRA's broad delegation of legislative power to the Sentencing Commission against a separation of powers challenge. *See United States v. Mistretta*, 488 U.S. 361, 412 (1989). Further, Fox's argument defies the Supreme Court's express recognition in *Williams* and *Stinson* that Policy Statements may control how district courts apply the Guidelines. Accordingly, Policy Statement 1B1.10 does not raise constitutional concerns.

## IV

**[4]** For the foregoing reasons, we REVERSE the district court's sentence modification and REMAND for imposition of a sentence not inconsistent with this opinion.

REVERSED and REMANDED.