# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1396

_____

United States of America

*Plaintiff - Appellee*

v.

Eric D. Harris

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: June 15, 2012
Filed: August 23, 2012

_____

Before SMITH, BEAM, and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

The district court[1] sentenced Eric D. Harris to 110 months' imprisonment for distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Subsequently, Harris filed a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2). The district court denied the motion. Harris appeals, arguing that the district court erred in finding that it lacked authority to reduce his sentence. We affirm.

## I. *Background*

On March 16, 2009, Harris distributed cocaine base to a confidential informant (CI). The CI gave Harris $350, and in exchange for the money, Harris gave the CI 3.3 grams of cocaine base. Harris also distributed heroin to the CI. Harris was charged with distributing cocaine base ("Count I") and distributing heroin ("Count II"), in violation of 21 U.S.C. § 841(a)(1). Pursuant to a plea agreement, Harris pleaded guilty to Count I of the indictment, and the government dismissed Count II.

Pursuant to U.S.S.G. § 2D1.1(c), the presentence investigation report (PSR) calculated a base-offense level of 20 because Harris's offense involved a quantity of cocaine base and heroin equivalent to 68.55 kilograms of marijuana. Because Harris had two prior convictions in 1997 and 2000 for second-degree robbery, the PSR categorized Harris as a career offender under U.S.S.G. § 4B1.1. The applicable offense level listed in the career-offender table in § 4B1.1 was higher than that listed in the drug-quantity table in § 2D1.1; as a result, the PSR applied an offense level of 32, the level listed in the career-offender table. *See* U.S.S.G. § 4B1.1(b)(C). After subtracting three levels for acceptance of responsibility, the PSR calculated a total offense level of 29 and a criminal history category of VI,[2] which produced a Guidelines range of 151 to 188 months' imprisonment.

---

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

[2]"A career offender's criminal history category in every case . . . shall be Category VI." U.S.S.G. § 4B1.1(b).

The district court sentenced Harris to 110 months' imprisonment and three years of supervised release—well below the Guidelines range. The district court stated that the downward variance was warranted because, "looking at [his] background, even considering those criminal aspects," the court believed that Harris was "redeemable." In December 2011, Harris moved for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) based on Amendment 750 to the Sentencing Guidelines, which reduced the offense levels listed in U.S.S.G. § 2D1.1 for certain crack-cocaine offenses. The court denied his motion on the ground that Amendment 750 did not affect his sentence as a career offender.

## II. *Discussion*

On appeal, Harris argues that the district court erred in denying his motion for a reduction of his sentence because of his career-offender status. Specifically, Harris contends that the district court may modify his sentence pursuant to 18 U.S.C. § 3582(c)(2).

Section 3582(c)(2) states that a district court "may not modify a term of imprisonment once it has been imposed except . . . in the case of a defendant who has been sentenced to a term of imprisonment *based on* a sentencing range that has subsequently been lowered by the Sentencing Commission." (Emphasis added.) In that case, "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* According to the policy statement applicable to § 3582(c)(2), "[a] reduction in the defendant's term of imprisonment . . . is not authorized . . . if . . . [the amendment] does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2). Thus,

> [i]n determining whether . . . a reduction in the defendant's term of imprisonment . . . is warranted, the court shall determine the amended

guideline range that would have been applicable to the defendant if the amendment[] to the guidelines . . . had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendment[] . . . for the corresponding guideline provisions . . . and shall leave all other guideline application decisions unaffected.

U.S.S.G. § 1B1.10(b)(1); *see also* § 1B1.10 Application Note 1(A) ("[A] reduction in the defendant's term of imprisonment is not authorized . . . if . . . an amendment [to the Guidelines range] is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision . . . .").

On November 1, 2011, Amendment 759 modified U.S.S.G. § 1B1.10. *See* U.S.S.G. App. C, Amend. 759 (2011). "Before Amendment 759, . . . a district court [could] lower a defendant's prison sentence below the amended [G]uidelines range if the original sentence was, for any reason, below the original [G]uidelines range." *United States v. Glover*, No. 12-10580, 2012 WL 2814303, at *4 (11th Cir. Jul. 11, 2012) (slip copy) (citing U.S.S.G. § 1B1.10(b)(2)(B) (Nov. 2010)). "After Amendment 759, however, a district court may lower a defendant's sentence below the amended [G]uidelines range only if the original sentence was below the original [G]uidelines range because the defendant provided substantial assistance to the government." *Id.* (citing U.S.S.G. § 1B1.10(b)(2)(B) (Nov. 2011)).

Construing the applicable Guidelines and policy statement, this court has held that "[w]hen a defendant is found to be a career offender [and is sentenced] under section 4B1.1, the applicable [G]uideline[s] range under section 3582(c)(2) is his career[-]offender range, even if the actual sentence is a downward departure [or variance] from it." *United States v. Blackmon*, 584 F.3d 1115, 1116 (8th Cir. 2009) (per curiam); *see also United States v. Tolliver*, 570 F.3d 1062, 1066–67 (8th Cir. 2009) (citing *United States v. Caraballo*, 552 F.3d 6, 11 (1st Cir. 2008) ("Under an

advisory guidelines system, a variance is granted in the sentencing court's discretion *after* the court has established an appropriately calculated [G]uideline sentencing range. It is that sentencing range that must be lowered by an amendment in order to engage the gears of section 3582(c)(2)." (internal citation omitted))). Thus, under our current precedent, Harris is not eligible for a reduced sentence based on amendments to the crack-cocaine guidelines in U.S.S.G. § 2D1.1 because his sentence is not based on the crack-cocaine guidelines but, rather, on the applicable career-offender range set forth in § 4B1.1(b). *Cf. United States v. Lamb*, No. 12-10758, 2012 WL 3086220, at *1 (11th Cir. Jul. 31, 2012) (per curiam) (slip copy) (finding that a defendant sentenced pursuant to U.S.S.G. § 4B1.1 was not eligible for a sentence reduction as a result of Amendment 750); *United States v. Joulevette*, 11-41386, 2012 WL 3062167, at *1 (5th Cir. Jul. 27, 2012) (per curiam) (slip copy) (same); *United States v. Davidson*, No. 12-1123, 2012 WL 2914495, at *2 (3d Cir. Jul. 18, 2012) (per curiam) (slip copy) (same); *United States v. Miller*, No. 12-2032, 2012 WL 2855791, at *1 (10th Cir. Jul. 12, 2012) (slip copy) (same); *United States v. Boone*, No. 12-6166, 2012 WL 2019124, at *1 (4th Cir. June 6, 2012) (per curiam) (slip copy) (same).

Nonetheless, Harris avers that he is eligible for a reduced sentence even though he was sentenced as a career offender pursuant to § 4B1.1(b). Specifically, he contends that (1) *Freeman v. United States*, 131 S. Ct. 2685 (2011), undermines this court's prior holdings and warrants the imposition of a § 3582(c) reduction; (2) Amendment 759 to U.S.S.G. § 1B1.10, which limits the district court's discretion to modify a sentence in cases such as this one, is invalid; and (3) Amendment 759 to U.S.S.G. § 1B1.10 exceeds the Sentencing Commission's authority under 28 U.S.C. § 944(u) and violates separation of powers. We review de novo the district court's legal conclusions regarding the scope of its authority under the Sentencing Guidelines. *United States v. Moreno*, 679 F.3d 1003, 1004 (8th Cir. 2012) (per curiam).

A. *Section 3582(c) in Light of* Freeman

First, Harris contends that the Supreme Court's holding in *Freeman* undermines this circuit's precedent that a career offender sentenced under U.S.S.G. § 4B1.1(b) is not eligible for a reduced sentence based on amendments to the crack-cocaine guidelines. In *Freeman*, the Supreme Court considered whether "defendants who enter into 11(c)(1)(C) agreements that specify a particular sentence may be said to have been sentenced 'based on' a Guidelines sentencing range, making them eligible for relief under § 3582(c)(2)." 131 S. Ct. at 2691.[3] A four-Justice plurality found that the district court could consider whether to reduce the sentence of a defendant who entered into an agreement because "[e]ven when a defendant enters into an 11(c)(1)(C) agreement, the judge's decision to accept the plea and impose the recommended sentence is likely to be based on the Guidelines; and when it is, the defendant should be eligible to seek § 3582(c)(2) relief." *Id.* at 2695.

Justice Sotomayor, who concurred in the judgment, rejected the plurality's view that because "a district court [must] use the Guidelines as a yardstick in deciding whether to accept [an 11(c)(1)(C)] agreement[,] . . . the term of imprisonment imposed by the court is 'based on' a particular Guidelines sentencing range." *Id.* at 2696. Instead, she determined that "[t]he term of imprisonment imposed pursuant to [an 11(c)(1)(C)] agreement is . . . 'based on' the agreement itself." *Id.* Nonetheless, Justice Sotomayor concluded that "when [the] agreement *expressly uses a Guidelines sentencing range* to establish the term of imprisonment, and that range is subsequently lowered by the Commission, the defendant is eligible for sentence reduction under § 3582(c)(2)." *Id.* at 2698 (emphasis added). The plea agreement in *Freeman* expressly used a Guidelines sentence; therefore, she concluded that the defendant was eligible for a § 3582(c)(2) reduction. *Id.* at 2699–2700.

_____

[3]A plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) states "that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply."

We have yet to address whether "the five Justices' views about the term 'based on' can be reconciled and applied in a career[-]offender setting." *United States v. Jenkins*, No. 4:08CR3018, 2012 WL 1150496, at *4 (D. Neb. Apr. 4, 2012) (slip copy) (second internal quotation omitted). The Second Circuit considered this issue in *United States v. Rivera*, 662 F.3d 166, 176 (2d Cir. 2011). In *Rivera*, despite the defendant's career-offender status, the district court applied the offense level that the drug-quantity table in U.S.S.G. § 2D1.1(c)(1) prescribed because it was higher than the offense level that the career-offender table prescribed. *Id.* at 169–70; *see also* U.S.S.G. § 4B1.1(b) (Only "if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable[] [does] the offense level from the table in this subsection . . . apply."). The district court then departed downward three levels because of the defendant's mental condition and sentenced him at the bottom of the resulting range. *Rivera*, 662 F.3d at 169. On appeal, the Second Circuit held that "[w]here the sentencing judge departs from a range computed under the career[-]offender guideline to a lower range, the sentence imposed was 'based on' the latter range for purposes of § 3582(c)(2), and for the purposes of § 1B1.10 that range is the '[G]uideline[s] range applicable' to the defendant." *Id.* at 177.

The Second Circuit noted that "[i]f [the defendant] was sentenced 'based on' the career[-]offender range, he is not eligible for a sentence reduction . . . . because the retroactive amendment reduces [his] career[-]offender *offense level* from 38 to 37, but that has no effect on the resulting [G]uidelines *range*." *Id.* at 174. But if the sentence "was 'based on' the range produced by subtracting three offense levels from the career[-]offender computation," then the defendant would be eligible for a reduction in his sentence. *Id.* The Second Circuit concluded that "the district court should be permitted to revisit [the defendant's] sentence to the extent allowable under § 3582(c)(2) and § 1B1.10." *Id.* at 175.

*Rivera* is not helpful to Harris. First, the Second Circuit based its holding in *Rivera* in part on its prior "holding in [*United States v.*] *McGee*[, 553 F.3d 225 (2d Cir. 2009) (per curiam),] that when the sentencing judge departs from a career[-] offender range to the range established by the offense guideline, a modification under § 3582(c)(2) is available if the latter range has been lowered by the retroactive amendment." *Rivera*, 662 F.3d at 172 n.5. This circuit has rejected *McGee*, holding that "any post-departure guideline range that the district court might have relied upon in determining the extent of [the] departure was not the 'applicable [G]uideline[s] range'" because the Guidelines "define all departures to be outside the 'applicable [G]uideline[s] range.'" *Tolliver*, 570 F.3d at 1066 (citing U.S.S.G. § 1B1.1); *see also Jenkins*, 2012 WL 1150496, at *5 (noting our circuit's rejection of *McGee*). Moreover, the Second Circuit "acknowledged in *Rivera* that [] then-proposed [A]mendment [759] to U.S.S.G. § 1B1.10 would 'preclude sentence modifications in situations like the one in *McGee*'" because the amendment would define the "'applicable [G]uideline[s] range'" as "'the pre-departure range from the initial sentencing.'" *Jenkins*, 2012 WL 1150496, at *7 (quoting *Rivera*, 662 F.3d at 183) (footnote omitted). This amendment went into effect on November 1, 2011. U.S.S.G. App. C, Amend. 759 (2011).

Second, "[e]ven if [we] were to . . . apply the Second Circuit's rule in [Harris's] case, [Harris's] applicable [G]uideline[s] range would not be lowered." *Jenkins*, 2012 WL 1150496, at *6. Unlike the defendant in *Rivera*, whose original sentencing range was based on the offense level that the drug quantity table in § 2D1.1 prescribed, Harris's sentencing range was based on the offense level that the table in the career-offender guideline prescribed. *Id.*

[I]f Amendment 750 had been in effect at the time of [Harris's] original sentencing, his section 2D1.1 offense level [might] have been [lower].[4] Under section 4B1.1, however, his offense level still would have been [29] and his criminal history category still would have been VI. In other words, unlike Rivera, [Harris] sees no benefit when the amended guideline is substituted for the original guideline. . . . And the same additional 3-level reduction . . . would have placed [Harris] in precisely the same spot that he was in prior to the adoption of Amendment 750.

*Id.*

In short, neither *Freeman* nor *Rivera* address this court's primary reason for denying Harris's § 3582(c) motion: "i.e., that [Harris's] 'applicable [G]uideline[s] range' is the career[-]offender range—excluding any departures—and [Harris] is ineligible for § 3582(c)(2) relief because the career[-]offender range was not lowered by [Amendment 750] to the crack Guidelines." *Jenkins*, 2012 WL 1150496, at *6.[5] Thus, *Freeman* is inapposite to Harris's case and does not alter our prior precedent that "[w]hen a defendant is found to be a career offender under section 4B1.1, the applicable [G]uideline[s] range under section 3582(c)(2) is his career[-]offender range, even if the actual sentence is a downward departure from it." *Blackmon*, 584 F.3d at 1116.

---

[4]We assume without deciding that Amendment 750 would have resulted in a lower offense level under § 2D1.1.

[5]The Seventh Circuit has likewise concluded that "*Freeman* has nothing to do with how retroactive amendments affect career offenders." *United States v. Bonds*, 468 F. App'x 620, 620 (7th Cir. 2012) (unpublished per curiam) (affirming district court's denial of defendant's motion to reduce sentence under Amendments 750 and 759 because the defendant "was sentenced as a career offender, and the amended Guidelines do not change the ranges for career offenders").

B. *Validity of Amendment 759*

Alternatively, Harris argues that Amendment 759 to U.S.S.G. § 1B1.10 is invalid for two reasons. First, he contends that Amendment 759 is invalid because the Sentencing Commission did not comply with the applicable provisions of the Administrative Procedures Act (APA) in adopting the amendment. Second, he argues that Amendment 759 exceeds the Sentencing Commission's authority under 28 U.S.C. § 994(u), and even if it were permissible under § 994(u), it violates separation of powers. Assuming that Amendment 759 to § 1B1.10 affects Harris's sentence,[6] we consider each argument in turn.

1. *Compliance With the APA*

Harris argues that the Sentencing Commission failed to comply with the APA in adopting Amendment 759. Specifically, he contends that § 1B1.10 is actually the equivalent of a sentencing guideline; therefore, it must be subjected to the notice-and-comment procedure of 5 U.S.C. § 553(b) prior to its adoption.

"The Sentencing Reform Act of 1984 ('SRA'), 98 Stat. 1987, established the United States Sentencing Commission and authorized it to promulgate Sentencing

---

[6]As noted *supra*, Harris's sentence was determined by the career-offender guideline, which "was not lowered by [Amendment 750] to the crack Guidelines." *Jenkins*, 2012 WL 1150496, at *6. Amendment 759 to § 1B1.10, which "did nothing more than limit a district court's authority to reduce a defendant's sentence below the amended [G]uidelines range . . . . does not permit a court to reduce a defendant's sentence based on a [G]uidelines amendment that does not lower his [G]uidelines range." *Glover*, 2012 WL 2814303, at *4. "Instead, as we have discussed, a court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(2) based on a retroactive amendment to the crack[-]cocaine base offense levels if and only if that retroactive amendment actually lowers the defendant's [G]uidelines range." *Id.* Since Amendment 750 did not change the Guidelines range for Harris's sentence, the validity or invalidity of Amendment 759 to § 1B1.10 does not affect Harris's sentence.

Guidelines and to issue Policy Statements." *United States v. Fox*, 631 F.3d 1128, 1130 (9th Cir. 2011) (citing 28 U.S.C. §§ 991, 994(a)). "Guidelines are 'for use of a sentencing court in determining the sentence to be imposed in a criminal case,'" while "Policy Statements should define 'the appropriate use of . . . the sentence modification provisions set forth in . . . 18 U.S.C. § 3582(c).'" *Id.* at 1131 (quoting 28 U.S.C. § 994(a)(1) and (2)) (alterations in original).

> The Sentencing Commission must jump through more procedural hoops to issue a Guideline than to issue a Policy Statement. Most notably, when issuing Guidelines, the Sentencing Commission must comply with the Administrative Procedure Act's notice and comment provisions and must submit the Guideline to Congress 180 days before it takes effect, along with a statement of the Commission's reasons for issuing the Guideline.

*Id.* (internal citations omitted).

In *Fox*, the Ninth Circuit determined that "1B1.10 . . . performs a function that Congress explicitly contemplated Policy Statements would perform, viz., it clarifies 'the appropriate use of . . . sentence modification' proceedings." *Id.* at 1132 (quoting 28 U.S.C. § 994(a)(2)(C)) (alteration in original). The court also rejected the defendant's argument "that Policy Statement 1B1.10 'determines the sentence to be imposed in a criminal case,'" concluding that "Policy Statement 1B1.10 does not even apply until a sentence has already been imposed, at which point it merely limits the scope of sentence reduction proceedings, prohibiting district courts from using such proceedings to engage in plenary reconsideration of the sentence they already imposed." *Id.* Although the court acknowledged that "Policy Statement 1B1.10 may affect the length of the sentence which a defendant ultimately serves," it found such fact "unremarkable, since procedural rules are always capable of affecting substantive outcomes." *Id.*

-11-

We agree with the Ninth Circuit and find, for the reasons listed in *Fox*, that Harris's challenge to Amendment 759 as invalid under the APA fails.

2. *Authority Under 28 U.S.C. § 994(u) and Separation of Powers*

Harris also argues that Amendment 759 exceeds the Sentencing Commission's authority under 28 U.S.C. § 994(u), which instructs the Commission to "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for [an] offense may be reduced" "[i]f the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses." In the alternative, he argues that even if Amendment 759 were permissible under § 994(u), it violates separation of powers.

Every circuit that has considered the separation-of-powers issue has held that "[the] statutory provisions [in 28 U.S.C. 994 and 18 U.S.C. § 3582(c)] are a sufficient delegation" of Congress's authority to the Sentencing Commission. *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011). Congress

> gave the Commission the discretion to determine . . . "in what circumstances and by what amount" a sentence may be reduced, *see* § 994(u), and that reductions should further the purposes of § 3553(a), *see* §§ 994(2) and 3582(c). One could hardly say that there is "an absence of standards" to direct the Commission's issuance of § 1B1.10. To be sure, there is no specific delegation to the Commission of the power to make the guidelines binding in a limited set of circumstances or to prevent a court from considering non-§ 3553(a) factor during sentencing. But that argument is nothing more than a strawman. . . . Congress need not expressly authorize every determination made by the Commission. Congress has set forth sufficient standards for the Commission in exercising its discretion, and § 1B1.10 does not present a separation-of-powers problem.

*Id.* at 435; *see also United States v. Horn*, 679 F.3d 397, 404 (6th Cir. 2012) (holding that "[t]he policy statements embodied in U.S.S.G. § 1B1.10 are constitutional under

separation-of-powers principles" in part because Congress "set forth intelligible principles to guide the Commission's actions"); *United States v. Smith*, 459 F. App'x 99, 101 (3d Cir. 2012) (unpublished) ("Congress set forth an intelligible principle in these provisions to guide the Commission. . . . [B]oth §§ 994(u) and 994(a)(2) limit and inform the Commission on how it must exercise its delegated authority." (footnote omitted)); *Fox*, 631 F.3d at 1133 (finding that "Policy Statement 1B1.10 does not raise constitutional concerns"); *United States v. McGee*, 615 F.3d 1287, 1293 n.2 (10th Cir. 2010) (noting that "this court has previously rejected a similar separation-of-powers challenge to § 1B1.10" (citing *United States v. Dryden*, 563 F.3d 1168, 1171 (10th Cir. 2009))).

The Sixth Circuit in *Horn* explicitly rejected the defendant's characterization of "the policy statements [embodied in § 1B1.10] as an unauthorized power grab by the Sentencing Commission, absent any congressional delegation of authority." 679 F.3d at 404. According to the court, "Congress has delegated the power to the Commission to issue binding policy statements," and this delegation of authority "[is] constitutionally permissible because Congress set forth intelligible principles to guide the retroactivity determination." *Id*.; *see also United States v. Goodrich*, Criminal Action No. 03–487–11, 2012 WL 1231780, at *3 (E.D. Pa. Apr. 12, 2012) (slip copy) (finding "unpersuasive" the defendant's argument that § 1B1.10(b)(2)(A) is not binding because "the Commission's adoption of that guideline exceeded its statutory powers, violated the separation of powers doctrine, and was invalid because it was not properly noticed for comment"); *United States v. Lott*, Criminal Action No. 04–786, 2012 WL 170698, at *2 (E.D. Pa. Jan. 19, 2012) (slip copy) ("[The defendant] asserts that this court is not bound by the limitation found in U.S.S.G. § 1B1.10(b)(2)(A) and the associated comments because it: (1) exceeds the Commission's statutory power; (2) is unconstitutional; and (3) was not properly noticed for comment. We are aware of no court which has adopted [the defendant's] position and find these arguments unpersuasive.").

In light of the holdings in our sister circuits, we reject Harris's argument that the Sentencing Commission exceeded its statutory authority by enacting Amendment 759 or that Amendment 759 violates the separation-of-powers doctrine.

### III. *Conclusion*

For the foregoing reasons, we affirm the district court's judgment.

_____