**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHEMEHUEVI INDIAN TRIBE; CHICKEN RANCH RANCHERIA OF ME-WUK INDIANS, | No. 17-55604 |
| *Plaintiffs-Appellants*, | D.C. No. 5:16-cv-01347-JFW-MRW |
| v. | |
| GAVIN NEWSOM, Governor of California; STATE OF CALIFORNIA, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Submitted October 9, 2018[*]
Pasadena, California

Filed March 21, 2019

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  Sandra S. Ikuta and John B. Owens, Circuit Judges, and Haywood S. Gilliam, Jr.,[**] District Judge.

Opinion by Judge Gilliam

---

**SUMMARY**[***]

### Indian Gaming Regulatory Act

The panel affirmed the district court's order granting summary judgment to the State of California in an action brought by Indian tribes under the Indian Gaming Regulatory Act.

The panel held that IGRA permits tribes and states to negotiate the duration of a compact governing the conduct of a tribe's class III gaming activities.  Accordingly, a termination provision in a compact was not void under IGRA.

---

[**] The Honorable Haywood S. Gilliam, Jr., United States District Judge for the Northern District of California, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Lester J. Marston, Rapport and Marston, Ukiah, California, for Plaintiffs-Appellant.

Xavier Becerra, Attorney General of California; Sara J. Drake, Senior Assistant Attorney General; T. Michelle Laird and James G. Waian, Deputy Attorneys General; Office of the Attorney General, San Diego, California; for Defendants-Appellees.

**OPINION**

GILLIAM, District Judge:

This case presents an issue of first impression: Does the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721, permit tribes and states to negotiate the duration of a compact governing the conduct of a tribe's class III gaming activities? Because we conclude that IGRA's plain language permits durational provisions in compacts, we affirm the district court's order granting summary judgment to the State of California.

I

Congress passed IGRA to establish a framework for regulating gaming on Indian lands. *See* 25 U.S.C. § 2702. Under that framework, IGRA creates three classes of gaming. *In re Indian Gaming Related Cases*, 331 F.3d 1094, 1096–97 (9th Cir. 2003) (*Coyote Valley II*). Class III gaming, the kind at issue here, "includes the types of high-stakes games usually associated with Nevada-style gambling," and "is subject to a greater degree of federal-state

regulation than either class I or class II gaming." *Coyote Valley II*, 331 F.3d at 1097; *see also* 25 U.S.C. § 2703(8) (defining "class III gaming"). In general, class III gaming may occur on Indian lands only if the activity is (1) authorized by an ordinance or resolution "adopted by the governing body of the Indian tribe having jurisdiction over such lands" and "approved by the Chairman" of the National Indian Gaming Commission ("the Chairperson"); (2) "located in a State that permits such gaming for any purpose by any person, organization, or entity"; and (3) "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State . . . that is in effect." 25 U.S.C. § 2710(d)(1).[1]

The Chicken Ranch Rancheria of Me-Wuk Indians and the Chemehuevi Indian Tribe are federally recognized Indian tribes in California. California permits certain forms of class III gaming under an effective tribal-state gaming compact. The Tribes each have enacted gaming ordinances that were approved by the Chairperson. Each of the Tribes executed a compact with the State in 1999, and the Assistant Secretary of Indian Affairs approved each compact.[2] On May 16, 2000, notice of that approval was published in the

---

[1] Class III gaming is permitted without an agreed-upon compact only if a district court finds that the state has not negotiated in good faith, the state rejects a court-appointed mediator's selection of the tribe's proposed compact, and the Secretary prescribes procedures under which class III gaming may be conducted. *See* 25 U.S.C. § 2710(d)(7)(B). The Tribes do not allege that the State negotiated in bad faith.

[2] Because the compacts signed by Chicken Ranch and Chemehuevi are substantively identical, we refer to the Tribes' compacts collectively as "the Compact" or "the 1999 Compact."

Federal Register.  Under the Compact, the Tribes operate casinos on "Indian lands," as that term is defined in IGRA.

The 1999 Compact contains a termination provision ("the Termination Provision") that sets December 31, 2020 as the Compact's end date.  The Termination Provision automatically extends the end date to June 30, 2022 if the parties have not agreed to amend the Compact or entered into a new compact before December 31, 2020.

The Compact separately includes (1) provisions for renegotiation and amendment; (2) meet and confer requirements before a party may seek arbitration or file suit; and (3) a limited waiver of the State's sovereign immunity for issues "arising under" the Compact.  It is undisputed that the parties have fulfilled the Compact's meet and confer requirements.

On April 20, 2016, the Tribes sent a letter asking the State to concede that the Termination Provision is void under IGRA, and that the Tribes have no obligation to negotiate a renewal of the Compact.  The State disagreed and declined the Tribes' request.  The Tribes then filed suit in the Central District of California.  After the filing of cross-motions for summary judgment, the district court granted the State's motion and denied the Tribes' motion.  The district court issued a final judgment, and this appeal followed.

II

We review the district court's grant of summary judgment de novo and may affirm on any ground supported by the record.  *California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960, 964 (9th Cir. 2018) (*citing Phoenix Mem'l Hosp. v. Sebelius*, 622 F.3d 1219, 1224 (9th Cir. 2010)).

Statutory interpretation presents a question of law, which we also review de novo.  *Id.*

### III

This case presents an issue of first impression regarding the validity of durational limits on compacts under IGRA. The Tribes contend that IGRA's plain language precludes durational limits.  The State agrees that IGRA's plain language is determinative, but disagrees that the statutory language supports the Tribes' position.

Section 2710(d)(3)(C) of IGRA sets out the range of subjects addressable in tribal-state compacts.  In full, that section states:

> Any Tribal-State compact negotiated under subparagraph (A) may include provisions relating to—
>
> (i) the application of the criminal and civil laws and regulations of the Indian tribe or the State that are directly related to, and necessary for, the licensing and regulation of such activity;
>
> (ii) the allocation of criminal and civil jurisdiction between the State and the Indian tribe necessary for the enforcement of such laws and regulations;
>
> (iii) the assessment by the State of such activities in such amounts as are necessary to defray the costs of regulating such activity;

(iv) taxation by the Indian tribe of such activity in amounts comparable to amounts assessed by the State for comparable activities;

(v) remedies for breach of contract;

(vi) standards for the operation of such activity and maintenance of the gaming facility, including licensing; and

(vii) any other subjects that are directly related to the operation of gaming activities.

25 U.S.C. § 2710(d)(3)(C).

The parties' dispute turns on the meaning of this section. The Tribes contend that once they have satisfied the three minimum statutory requirements in 25 U.S.C. § 2710(d)(1), the statute confers an "absolute right" to engage in class III gaming, so as to preclude durational limits. The State counters that the plain language of subsections (d)(3)(C)(vi) and (d)(3)(C)(vii) establishes catch-all categories, and that those categories broadly authorize the inclusion of durational provisions in compacts.

In interpreting IGRA, we apply "traditional tools of statutory construction." *Rumsey Indian Rancheria of Wintun Indians v. Wilson*, 64 F.3d 1250, 1257 (9th Cir. 1994), *amended on denial of reh'g by* 99 F.3d 321 (9th Cir. 1996). We begin with the statute's language, which is conclusive unless literally applying the statute's text demonstrably contradicts Congress's intent. *See id.* (first citing *Mallard v. U.S. Dist. Court for the So. Dist. of Iowa,* 490 U.S. 296, 301 (1989); and then citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)).

"When deciding whether the language is plain, courts must read the words in their context and with a view to their place in the overall statutory scheme." *Rainero v. Archon Corp.*, 844 F.3d 832, 837 (9th Cir. 2016) (quotations and alterations omitted). "In most cases, 'if we find the statutory language unambiguous, then we will not resort to legislative history' to guide our review." *Rumsey Indian Rancheria*, 64 F.3d at 1257 (quoting *Fernandez v. Brock*, 840 F.2d 622, 632 (9th Cir. 1988)).

Applying traditional tools of statutory construction, we find that IGRA's plain language unambiguously permits parties to include durational limits in compacts. The phrases "standards for the operation of [gaming] activity" and "any other subjects . . . directly related to the operation of gaming activities" are naturally read as catch-all categories. Viewed in context, those terms are broader than the more specific topics enumerated in paragraphs (3)(C)(i)–(v). And once paragraphs (3)(C)(vi)–(vii) are properly framed as catch-all categories, the inquiry is whether a durational limit is either a "standard[] for the operation of [gaming] activity" or a term "directly related to the operation of gaming activities." We conclude that, at a minimum, a durational limit is "directly related to the operation of gaming activities." *See* 25 U.S.C. § 2710(d)(3)(C)(vii).

To start, IGRA's structure dictates this interpretation. Construing paragraph (3)(C)(vii)'s catch-all provision as permitting durational limits in compacts plainly coheres with IGRA's threshold requirement that a compact be "in effect" for class III gaming activity to lawfully occur. *See id.* § 2710(d)(1)(C). Congress's inclusion of that language indicates that it contemplated that a party could properly raise a compact's "effective" date during negotiations. And as a matter of common sense, given that a tribe may not

conduct gaming activities without an effective compact, a durational limit on the effectiveness of a compact is "directly related to the operation of gaming activities." *See id.* § 2710(d)(3)(C)(vii).

Subsection (d)(1)(C)'s effectiveness requirement also undercuts the Tribes' position that IGRA gives tribes an indefinite right to administer class III gaming. Rather, that regulatory right is qualified by the existence of a valid tribal-state compact. *See id.* Numerous other sections in IGRA support this view. *See, e.g.*, *id.* § 2710(d)(2)(C) ("[C]lass III gaming activity on the Indian lands of the Indian tribe shall be fully subject to the terms and conditions of the Tribal-State compact entered into under paragraph (3) by the Indian tribe that is in effect."); *id.* § 2710(d)(5) ("Nothing in this subsection shall impair the right of an Indian tribe to regulate class III gaming on its Indian lands concurrently with the State, *except to the extent* that such regulation is inconsistent with, or less stringent than, the State laws and regulations made applicable by any Tribal-State compact entered into by the Indian tribe under paragraph (3) that is in effect.") (emphasis added). As it relates to the subjects deemed permissible for negotiation under Section 2710(d)(3)(C), then, the Termination Provision is "directly related to the operation of gaming activity" under paragraph (3)(C)(vii)'s catch-all provision.

We further reject as inconsistent with a plain reading of IGRA the Tribes' argument that the statute's silence regarding duration entirely prohibits a party from raising the subject during negotiations. The Tribes' alternative, presumably, is that all tribal-state compacts must run indefinitely. *See* Compl. for Declaratory & Injunctive Relief at 14–15, *Chemehuevi Indian Tribe v. Brown*, No. 5:16-cv-01347-JFW-MRW (C.D. Cal. Mar. 30, 2017) (prayer for

relief requesting declaration that the Termination Provision is void and unenforceable, and seeking order that the provision "is severed from the 1999 Compacts and that the remaining provisions of the 1999 Compacts are in full force"); *see also Cohen's Handbook of Federal Indian Law* § 12.05 (2017) ("Tribal compacts often contain terms regarding duration. Where no such terms exist, the compact is presumed to run indefinitely and neither party may unilaterally terminate a compact."). Nothing in the statute suggests that Congress intended that result, and we avoid reading in unstated statutory requirements. *See Ariz. State Bd. for Charter Sch. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1007 (9th Cir. 2006) ("In conducting [a plain meaning] analysis, we are not vested with the power to rewrite the statutes, but rather must construe what Congress has written. . . . It is for us to ascertain—neither to add nor to subtract, neither to delete nor to distort.") (quotations omitted). Moreover, demanding that only expressly enumerated subjects are addressable in compacts would render the catch-all language meaningless. We must instead "favor an interpretation that gives meaning to each statutory provision." *See Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734, 740 (2017).

We are unpersuaded by the Tribes' argument that the Supreme Court's decision in *Michigan v. Bay Mills Indian Community*, 572 U.S. 782 (2004), supports their position. In *Bay Mills*, the Supreme Court construed "class III gaming activity" to mean "just what it sounds like—the stuff involved in playing class III games." 572 U.S. at 792. Citing several IGRA provisions, including Section 2710(d)(3)(C)(i), the Court explained:

> Those phrases make perfect sense if "class III gaming activity" is what goes on in a

> casino—each roll of the dice and spin of the wheel. But they lose all meaning if, as Michigan argues, "class III gaming activity" refers equally to the off-site licensing or operation of the games. (Just plug in those words and see what happens.)

*Id.* In the Tribes' view, this passage supports their position that durational limits are impermissible subjects for negotiation, because they are not "directly related" to dice-rolling and wheel-spinning.

But the Supreme Court's interpretation of "gaming activity" in *Bay Mills* does not conflict with our holding that a compact's durational term is "directly related to the operation of gaming activities" within the meaning of paragraph (3)(C)(vii). First, the proper inquiry here is whether a compact's end date is so attenuated from gameplay that it falls outside of paragraph (3)(C)(vii), an issue the *Bay Mills* Court did not address. *See id.* at 785 ("The question in this case is whether tribal sovereign immunity bars Michigan's suit against the Bay Mills Indian Community for opening a casino outside Indian lands."). Second, if anything, *Bay Mills* suggested a broad view of negotiable subjects when it noted that states and tribes "need only bargain" for a term or condition, which in that case was a waiver of tribal sovereign immunity. *See id.* at 796–97 ("[I]f a State really wants to sue a tribe for gaming outside Indian lands, the State need only bargain for a waiver of immunity."). The Court added that "[s]tates have more than enough leverage to obtain such terms because a tribe cannot conduct class III gaming on its lands without a compact." *Id.* Accordingly, we reject the Tribes' argument that *Bay Mills* compels the conclusion that a durational limit is not "directly

related to the operation of gaming activities" within the meaning of paragraph (3)(C)(vii).

Our prior examinations of Section 2710(d)(3)(C) also support today's holding. In *Coyote Valley II*, for example, we considered the permissibility under IGRA of three compact provisions: "(1) the Revenue Sharing Trust Fund provision [RSTF]; (2) the Special Distribution Fund provision [SDF]; and (3) the Labor Relations provision." 331 F.3d at 1105. These provisions required compacting tribes to share gaming revenue with non-gaming tribes and the State, and to address the labor rights of gaming facility employees. *See id.* at 1104–07. The plaintiff tribe challenged these provisions as "outside the list of appropriate topics for Tribal–State compacts set forth in 25 U.S.C. § 2710(d)(3)(C)," which the tribe argued raised a presumption that the State negotiated in bad faith. *Id.* at 1109. We disagreed and held that IGRA did not "categorically forbid[]" the negotiated provisions. *Id.* at 1110. We also declined to find that the "State's insistence on their inclusion . . . demonstrat[ed] a lack of good faith." *Id.*

As to the RSTF in particular, which required gaming tribes to distribute revenue to non-gaming tribes, we held:

> It is clear that the RSTF provision falls within the scope of paragraph (3)(C)(vii). Congress sought through IGRA to "promot[e] tribal economic development, self-sufficiency, and strong tribal governments." *Id.* § 2702(1). The RSTF provision advances this Congressional goal by creating a mechanism whereby all of California's tribes—not just those fortunate enough to have land located

> in populous or accessible areas—can benefit
> from class III gaming activities in the State.

*Id.* at 1111.  We found that paragraph (3)(C)(vii) was "not ambiguous," that the RSTF "clearly" fell within its scope, and that there was no ambiguity to construe in the tribe's favor.  *Id.*  Citing the same reasons, we upheld the SDF's requirement that gaming tribes share revenue with the State.  *See id.* at 1114.  We further held that the Labor Relations provision was "directly related to the operation of gaming activities" and thus permissible under paragraph (3)(C)(vii): "Without the 'operation of gaming activities,' the jobs this provision covers would not exist; nor, conversely, could Indian gaming activities operate without someone performing these jobs."  *Id.* at 1115–16.  This reading of paragraph (3)(C)(vii) as unambiguous and allowing for negotiation regarding unenumerated topics supports our holding here: a duration provision is at least as closely related to the operation of gaming activities as the topics we found to be permissible subjects for negotiation in *Coyote Valley II*.

In summary, the State is correct that IGRA's plain language permits durational limits on compacts under the catch-all provision of 25 U.S.C. § 2710(d)(3)(C)(vii). Because the durational limits in the Tribes' compacts are valid, we **AFFIRM** the district court's order granting summary judgment to the State of California.