**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JORGE AVILA ALBERTO NAVARRO,
*Defendant-Appellant*.

No. 15-10245

D.C. No.
2:07 cr-0332
WBS-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, Senior District Judge, Presiding

Submitted August 11, 2015[*]
San Francisco, California

Filed September 4, 2015

Before: Stephen Reinhardt, A. Wallace Tashima,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Tashima

---

[*] The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2)(C).

## SUMMARY[**]

### Criminal Law

The panel affirmed the district court's denial of Jorge Avila Alberto Navarro's motion under 18 U.S.C. § 3582(c)(2) for reduction of sentence based on Amendments 782 and 788 to the Sentencing Guidelines.

The panel held that the district court did not abuse its discretion in granting Navarro's motion under Fed. R. App. P. 4(b)(4) for an extension of time to file an appeal, and that the notice of appeal is therefore timely.

The panel held that a district court cannot apply a retroactive amendment to reduce an already imposed sentence prior to that amendment's effective date. The panel also held that the Sentencing Commission's determination of the appropriate effective date for a retroactive amendment is not invalid simply because the Commission made reference to prisoners' rehabilitative needs.

## COUNSEL

Rachel R. Goldberg and Tara Azad Amin, Sidley Austin LLP, Chicago, Illinois; Robin Eve Wechkin, Sidley Austin LLP, Seattle, Washington; Heather E. Williams, Federal Defender, and Hannah Labaree, Assistant Federal Defender, Sacramento, California, for Defendant-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Benjamin B. Wagner, United States Attorney, Camil A. Skipper and Jason Hitt, Assistant United States Attorneys, Sacramento, California, for Plaintiff-Appellee.

**OPINION**

TASHIMA, Circuit Judge:

In this appeal, we examine the scope of the United States Sentencing Commission's (the "Commission") authority to limit the retroactive effect of its amendments to its Sentencing Guidelines. We hold that a district court cannot apply a retroactive amendment to reduce an already imposed sentence prior to that amendment's effective date. We also hold that the Commission's determination of the appropriate effective date for a retroactive amendment is not invalid simply because the Commission made reference to prisoners' rehabilitative needs. We therefore affirm.

**I.**

**A.**

In 2008, Jorge Avila Alberto Navarro pled guilty to possession with intent to distribute methamphetamine. At sentencing, the district court calculated the appropriate Guidelines range to be 151 to 188 months. On the government's motion, the district court imposed a below-Guidelines sentence of 113 months imprisonment. Under that sentence, Navarro is scheduled to be released on September 9, 2015.

On November 1, 2014, the Commission issued Amendment 782 to its Sentencing Guidelines, which lowered the recommended sentences for certain drug crimes, including the crime of which Navarro was convicted. *See* United States Sentencing Commission, *Guidelines Manual*, (hereinafter "USSG"), supp. app'x. C, amend 782 (2014). At the same time, the Commission promulgated another amendment, Amendment 788, which amended § 1B1.10 of the Guidelines to authorize district courts to apply Amendment 782 retroactively to reduce the length certain already-imposed sentences, provided that "the effective date of the court's order is November 1, 2015, or later." *See* USSG, supp. app'x. C, amend. 788 (2014); USSG § 1B1.10. In other words, Amendment 788 allowed district courts to hear motions for sentence reduction immediately, but instructed that any reduction based on the new Guidelines could not be effective until November 1, 2015, at the earliest.

The Commission explained at length both its decision to amend the Guidelines, and its decision to delay that amendment's retroactive effect. In particular, the Commission was concerned, "[in] light of the large number of cases potentially involved, . . . that the agencies of the federal criminal justice system responsible for the offenders' reentry into society need[ed] time to prepare, and to help the offenders prepare, for that reentry." *Id.* Summarizing its considerations, the Commission determined that a one-year delay would be needed:

> (1) to give courts adequate time to obtain and review the information necessary to make an individualized determination in each case of whether a sentence reduction is appropriate, (2) to ensure that, to the extent practicable, all

offenders who are to be released have the opportunity to participate in reentry programs and transitional services, such as placement in halfway houses, while still in the custody of the Bureau of Prisons, which increases their likelihood of successful reentry to society and thereby promotes public safety, and (3) to permit those agencies that will be responsible for offenders after their release to prepare for the increased responsibility.

*Id.* The Commission ended by reiterating that "offenders cannot be released from custody pursuant to retroactive application of Amendment 782 before November 1, 2015." *Id.*

### B.

On March 12, 2015, Navarro filed a motion under 18 U.S.C. § 3582(c)(2) asking the district court to reduce his sentence based on Amendments 782 and 788. Navarro calculated that, using the amended Guidelines and applying the same below-range deviation from his earlier sentence, he would be eligible for immediate release.[1] However, Navarro is currently scheduled to be released on September 9, 2015, well before Amendment 788's November 1, 2015, effective date. Navarro argues that the district court should apply Amendment 782 as though it were immediately retroactive, and accordingly order his immediate release. Navarro

---

[1] Because we determine that the date of Navarro's scheduled release precludes him from seeking a sentence reduction based on Amendments 782 and 788, we do not address whether and to what extent his sentence could be reduced were those amendments applicable to him.

contends that immediate application is necessary because the Commission's decision to delay the effective date of Amendment 788 was based, in part, on considerations related to prisoners' rehabilitative needs, and because the Commission's choice of a November 1, 2015, effective date, rather than an earlier date, was unconstitutionally arbitrary.

On April 21, 2015, the district court issued a written order denying Navarro's motion. Under Federal Rule of Appellate Procedure 4(b)(1)(A), Navarro had fourteen days from the district court's final order to appeal the court's decision. On May 8, 2015, seventeen days after the order was filed, Navarro moved under Rule 4(b)(4) for an extension of the time to file an appeal. He claimed that defense counsel had incorrectly assumed the court would use a form order, and so was awaiting that order before appealing. The district court granted Navarro's motion on May 11, 2015, reasoning that an extension was warranted "because defense counsel represents that he did not file a notice of appeal because he was waiting for the court to sign a Form 247." Navarro filed a notice of appeal that same day. The government argues that the district court should not have granted the motion, and that this appeal is therefore untimely.[2]

## II.

Although the requirement of a timely appeal is not a jurisdictional rule in criminal cases, where the government properly objects to an untimely filing, we must dismiss the appeal. *United States v. Sadler*, 480 F.3d 932, 941–42 (9th

---

[2] The district court's order granting Navarro's motion to extend time was entered before the government was able to file an opposition to the motion.

Cir. 2007). Because the government challenges the timeliness of Navarro's appeal, we must first determine whether this appeal is, in fact, timely.

Federal Rule of Appellate Procedure 4(b) generally requires that a criminal defendant file any notice of appeal within fourteen days of the judgment or order being appealed. However, "[u]pon a finding of excusable neglect or good cause, the district court may . . . extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed." Fed. R. App. P. 4(b)(4). "We review for abuse of discretion a district court's decision to grant or deny a motion for an extension of time to file a notice of appeal." *Pincay v. Andrews*, 389 F.3d 853, 858 (9th Cir. 2004). "If the court abused its discretion . . . the notice of appeal is untimely." *Meza v. Wash. State Dep't of Soc. & Health Servs.*, 683 F.2d 314, 315 (9th Cir. 1982).

Rule 4(b)(4) authorizes a district court to extend the time to appeal based on either of two grounds: "good cause" or "excusable neglect." Both are familiar terms in the world of judicial procedure, and both represent relatively malleable concepts. The district court did not specifically state on which of these two grounds it was extending the time to appeal. An analysis of "excusable neglect" generally requires a court to analyze the four factors set out by the Supreme Court. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993); *see also Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009). Because the district court did not engage in this analysis, we assume, instead, that it relied on the more loosely defined "good cause" standard.

"'Good cause' is a non-rigorous standard that has been construed broadly across procedural and statutory contexts."

*Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010) (discussing "good cause" in the context of Fed. R. Civ. P. 6(b)(1)). Here, Navarro's delay was due to an understandable mistake about the unwritten procedures of the specific judge before whom he was practicing. As Navarro explained in his motion to extend the time to appeal, numerous other judges in the Eastern District of California have issued orders denying motions for sentence reduction on a government-issued form known as "Form 247." In several of these cases, courts have filed the form following a short written order.[3] Moreover, although use of Form 247 is not mandatory, the Sentencing Commission has asked district courts to use the form when either granting or denying motions for sentence reduction. In this case, defense counsel mistakenly believed that the order he received on April 21, 2015, was not an appealable final order, but a preliminary order that would be followed by a final order on Form 247. He quickly realized his error, seventeen days after the original order, but not quickly enough to meet the dictates of Rule 4(b)(1). There is no indication of bad faith, or that the government was prejudiced by the three-day delay. The district court recognized the reasonableness of counsel's mistake and concluded that it constituted good cause. We cannot say that was an abuse of discretion. We therefore conclude that Navarro's notice of appeal was timely, and proceed to the merits of this appeal.

---

[3] Navarro has filed with this court a motion to take judicial notice of several unpublished district court orders using Form 247. That motion is hereby granted. *See* Fed. R. Evid. 201(b)(2); *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 689 n.1 (9th Cir. 2011).

## III.

We begin with Navarro's argument that the district court should have treated Amendment 782 as immediately retroactive because the Commission considered prisoners' rehabilitative needs in deciding to delay its retroactive effect. For the reasons discussed below, we conclude that this argument is unavailing.

## A.

Once a sentence of imprisonment has been imposed, that sentence generally is treated as final. *See* 18 U.S.C. § 3582(b). However, in an "act of lenity," Congress has crafted a limited exception for prisoners who were sentenced based on Guidelines that have since been amended downward. *Dillon v. United States*, 560 U.S. 817, 828 (2010). In such circumstances, 18 U.S.C. § 3582(c)(2) allows a defendant to request a reduced sentence based on new Guidelines and allows district courts to reduce a term of imprisonment, so long as "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." As the Supreme Court has explained, § 3582(c)(2) thus prescribes a limited, two-step inquiry. *Dillon*, 560 U.S. at 826. First, the court must look to "the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Id.* at 827. Because the Commission has statutory authority both to amend the Guidelines and to "determin[e] whether and to what extent an amendment will be retroactive . . . [a] court's power under § 3582(c)(2) . . . depends in the first instance on the Commission's decision not just to amend the Guidelines but to make the amendment retroactive." *Id.* at 826.

"At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.* at 827. This circumscribed inquiry is not to be treated as "plenary resentencing proceedings." *Id.* at 826. Stated differently, "the only 'appropriate use' of sentence modification proceedings under section 3582(c) is to adjust a sentence in light of a Guidelines amendment," so courts may not use such proceedings to "reconsider[] a sentence based on factors unrelated to a retroactive Guidelines amendment." *United States v. Fox*, 631 F.3d 1128, 1132 (9th Cir. 2011).

As the district court correctly concluded, Navarro cannot make it past step one of the *Dillon* inquiry. The Commission's instructions in § 1B1.10 make it perfectly clear that a court may not reduce a "term of imprisonment based on Amendment 782 unless the effective date of the court's order is November 1, 2015, or later." USSG § 1B1.10(e)(1). There is thus no way to reduce Navarro's sentence "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

## B.

Navarro contends that the district court should have ignored the explicit limitation on the retroactive effect of Amendment 788, and treated that amendment as immediately retroactive, because the Commission mentioned rehabilitative concerns in its statement of reasons for the Amendment. In advancing this argument, Navarro relies principally on the Supreme Court's decision in *Tapia v. United States*,

131 S. Ct. 2382 (2011), in which the Court held the Sentencing Reform Act "precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation." *Id.* at 2391. *Tapia*, in turn, relied on two related statutes, 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k). Section 3582(a) instructs sentencing courts "in determining whether to impose a term of imprisonment, and . . . in determining the length of the term" to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." Section 994(k) instructs the Commission to "insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment." In *Tapia*, the Court read these two statutes as sending the Commission and sentencing judges "the same message: Do not think about prison as a way to rehabilitate an offender." 131 S. Ct. at 2390.

Navarro contends that the Commission – and by extension, the district court – violated this proscription by citing to rehabilitative concerns in its stated reasons for Amendment 788. In particular Navarro cites to the Commission's statement that a one-year delay was necessary

> to ensure that, to the extent practicable, all offenders who are to be released have the opportunity to participate in reentry programs and transitional services, such as placement in halfway houses, while still in the custody of the Bureau of Prisons, which increases their likelihood of successful reentry to society and thereby promotes public safety.

USSG, supp. app'x. C, amend. 788.  The government does not dispute that this passage indicates a consideration of rehabilitation, and instead argues that (1) any flaw in the reasoning of Amendment 788 does not provide Navarro with a basis to reduce his sentence, and (2) regardless, *Tapia* is inapplicable in sentence reduction proceedings.[4]

We agree with the government on both points.  First, Navarro simply has not explained how a flaw, if any, in the Commission's reasoning in Amendment 788 would mandate an immediate retroactive application of Amendment 782.  As discussed above, a district court is without power to grant a sentence reduction not "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).  Amendment 782 itself was not retroactive, and nothing outside of Amendment 788 would make Amendment 782 retroactive to Navarro.  Even were we to conclude that the Commission fatally erred in promulgating Amendment 788, and that the Amendment was therefore unenforceable, Navarro would still be left without a basis to have his sentence reduced.

Moreover, we conclude, as did the district court, that *Tapia* does not apply to sentence reduction proceedings.  As the Supreme Court explained in *Dillon* and as we clarified in *Fox*, sentence reduction proceedings should not be treated as a second round of sentencing.  Simply put, the restrictions

---

[4] Because we conclude that *Tapia* does not apply in sentence reduction proceedings, we do not address the question of whether the quoted passage actually represents the sort of consideration of rehabilitation that *Tapia* forbids.  We note, however, that it is far from clear that arranging transition and reentry services for currently incarcerated inmates would constitute treating "prison as a way to rehabilitate an offender."  *Tapia*, 131 S. Ct. at 2390.

and rules associated with sentencing do not carry over to sentence reduction proceedings, which are instead governed by their own set of rules. *See Dillon*, 560 U.S. at 828 (holding that the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt does not apply to motions for sentence reduction).

*Tapia* does not change the distinction discussed in *Dillon*. By its own terms, *Tapia* does not apply to sentence reduction. The Supreme Court specifically held that a court could not "*impose or lengthen* a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation," but said nothing about reducing (or declining to reduce) a prison sentence. 131 S. Ct. at 2393 (emphasis added). And for good reason. The Court's decision in *Tapia* followed directly from its interpretation of two specific statutory provisions: 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k). Both address sentencing, not sentence reduction. Section 3582(a) presents instructions for a "court, in determining whether to impose a term of imprisonment, and . . . in determining the length of the term." A separate subsection, § 3582(c), governs sentence reduction, and that subsection contains no rule against considering rehabilitation. Similarly, § 994(k) instructs the Commission to "insure that the guidelines reflect the inappropriateness of *imposing a sentence* to a term of imprisonment for the purpose of rehabilitating the defendant." (emphasis added). However, § 994(k) says nothing about sentence reduction, and the subsection that authorizes the commission to make amendments retroactive, § 994(u), places no limit on

rehabilitative considerations.**5**   Thus deprived of any firm foothold in statutory text, Navarro is left to argue that *Tapia* should apply to his sentence reduction motion because sentence reduction, like sentencing, involves deciding how long an offender will stay in prison.  But importing the rules of sentencing into sentence reduction is precisely what *Dillon* instructs us not to do.  We thus conclude that *Tapia* does not apply in sentence reduction proceedings, and that it therefore does not provide a basis to challenge the Commission's decision to limit the retroactive effect of a Guidelines amendment.

## IV.

Navarro next argues that the Commission's decision to delay the effective date of Amendment 788 for a full year – until November 1, 2015 – was unconstitutionally arbitrary, in violation of the Due Process and Equal Protection Clauses of the Constitution.**6**   According to Navarro, the Commission

---

**5** Of course, before the Commission can make a Guidelines amendment retroactive, it must amend the Guidelines in the first place.  Even when an amendment will be applied retroactively, the initial change to the Guidelines will thus still be governed by all the usual rules, including § 994(k).  However, Navarro has not challenged the sentencing range expressed by the amended Guidelines, only the Commission's failure to make that amendment immediately retroactive.

**6** Technically, the Commission's Guidelines are not governed by the Equal Protection Clause of the Fourteenth Amendment, which applies only to the states, not to the federal government or federal entities.  *See Bolling v. Sharpe*, 347 U.S. 497, 498–99 (1954).  However, the Due Process Clause of the Fifth Amendment similarly prohibits unjustified discrimination by federal actors, and our "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal

had an insufficient basis to conclude that a one-year delay, rather than a shorter six-month delay, was necessary to achieve its stated goals. By choosing the one-year delay, Navarro argues, the Commission arbitrarily and unconstitutionally discriminated against those prisoners who were due for release more than six months, but less than a year, after Amendment 788 was issued. We find this argument unpersuasive.

To begin, we note that Navarro never presented this constitutional argument before the district court. Instead, citing to cases involving the Administrative Procedure Act ("APA"), Navarro argued that the Commission's decision not to make Amendment 782 retroactive prior to November 1, 2015, was "arbitrary, capricious, or manifestly contrary to the statute." *See Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). The district court correctly rejected this challenge, citing our prior holding that "[t]he Commission is not an agency subject to the requirements of the APA but 'an independent entity in the judicial branch.'" *See United States v. Tercero*, 734 F.3d 979, 984 (9th Cir. 2013) (quoting *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1450 (D.C. Cir. 1994)).

Navarro's constitutional argument is thus before the court for the first time on appeal. We generally will not entertain arguments that were not first presented before the district court. *See Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1180 (9th Cir. 2015). "This court has discretion to decide whether to reach such an issue, however, where the issue presented is a purely legal one and the record below has been fully

protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975).

developed." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1094 (9th Cir. 2014). Here, we choose to exercise that discretion to reach the merits of Navarro's constitutional claim because, on the record before us, we have little doubt that Navarro has failed to demonstrate a constitutional violation.

When the Commission enacts Guidelines treating one class of offenders differently from another, equal protection generally requires that the classification be "rationally related to a legitimate government interest." *United States v. Ruiz-Chairez*, 493 F.3d 1089, 1091 (9th Cir. 2007) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).[7] Under this rational-basis review, "[t]he burden falls on the party seeking to disprove the rationality of the relationship between the classification and the purpose." *Id*. Navarro has not met this burden.

As discussed above, the Commission stated three general reasons for its decision to delay the effective date of Amendment 788: (1) giving courts time to review the large number of eligible inmates and make individualized determinations; (2) arranging for transition and re-entry programs in order to reduce recidivism and protect public safety; and (3) permitting affected agencies to prepare for an increased workload.[8] USSG, app'x. C, amend. 788. These

---

[7] The Commission's decisions would, of course, be subject to a higher level of scrutiny if its classification implicated a fundamental right or a suspect classification. *See United States v. D'Anjou*, 16 F.3d 604, 612 (4th Cir. 1994).

[8] We focus here on the governmental interests stated by the Commission because they are most easily addressed. We recognize, however, that under rational-basis review, the government actor generally need not "actually articulate at any time the purpose or rationale supporting its

clearly constitute legitimate government interests. *See Ewing v. California*, 538 U.S. 11, 29 (2003) (recognizing "the State's public-safety interest in incapacitating and deterring recidivist felons"); *Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 82 (1988) (recognizing "the State's interest in conserving judicial resources"). There is also a rational connection between these interests and the one-year delay: The Commission reasonably was concerned that making Amendment 782 immediately retroactive would lead to a rush to the courts, pressuring the district courts to make release decisions quickly, and putting pressure on government agencies responsible for helping prisoners transition back into outside society. Thus, the Commission's decision easily survives rational-basis review.

Notwithstanding the legitimacy of the government interests at stake, Navarro argues that the Commission's decision violated due process because there was insufficient evidence before the Commission for it to conclude that a delay of one year was necessary. This argument misapprehends the scope of rational-basis review. Generally, "the absence of legislative facts explaining the distinction on the record has no significance in rational-basis analysis." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). Rather, rational-basis review allows for decisions "based on rational speculation unsupported by evidence or empirical data." *Id.* Moreover, "[t]he rational basis standard . . . does not require that the Commission choose the best means of advancing its goals." *Vermouth v. Corrothers*, 827 F.2d 599, 603 (9th Cir. 1987). Instead, all that is needed is some "rational connection" between the rule and the governmental

---

classification." *Armour v. City of Indianapolis, Ind.*, 132 S. Ct. 2073, 2082 (2012) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992)).

interest, regardless of whether that rule is an "exact fit" for the interest at issue. *Mauro v. Arpaio*, 188 F.3d 1054, 1059–60 (9th Cir. 1999). It was rational for the Commission to believe that some delay was appropriate, and Navarro has not demonstrated that a blanket one-year delay bore no rational connection to any legitimate governmental interest.

Finally, Navarro contends that the one-year delay was irrational as applied to him because he is an alien who will be removed from the country upon his release. He thus argues that the Commission's concerns about public safety and transitional services have no weight in his specific case. This argument again overstates the scope of our review. Under the rational-basis standard, we accept "generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Aleman v. Glickman*, 217 F.3d 1191, 1201 (9th Cir. 2000) (quoting *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 321 (1993)). The fact that the Commission's reasoning will apply with greater force to some groups of inmates than to others does not invalidate its otherwise-valid decision. We therefore conclude that Navarro has not met his "burden 'to negative every conceivable basis which might support'" the Commission's decision to delay the effective date of Amendment 788 for one year. *Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell*, 729 F.3d 1025, 1039 (9th Cir. 2013) (quoting *Aleman*, 217 F.3d at 1201).

## V.

Neither the Constitution nor any statute forbade the Commission from delaying the effective date of Amendment 788.[9]  Accordingly, the judgment of the district court is

**AFFIRMED.**

---

[9] The only other circuit to have addressed the delayed-effective-date issue also upheld the delay. *See United States v. Maiello*, No. 15-10532, 2015 WL 4931982 (11th Cir. Aug. 19, 2015).