**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

DILESH SHARMA,

*Defendant - Appellant*.

No. 23-616

D.C. No.
2:17-cr-00055-
TLN-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Argued and Submitted July 15, 2024
San Francisco, California

Filed October 28, 2024

Before: Milan D. Smith, Jr., Mark J. Bennett, and Anthony
D. Johnstone, Circuit Judges.

Opinion by Judge Johnstone

# SUMMARY[*]

## Criminal Law

The panel affirmed a sentence in a case in which the defendant brought facial due-process challenges to Congressionally directed Sentencing Guidelines enhancements for (1) using a computer to commit a child pornography offense, U.S.S.G. § 2G2.2(b)(6); and (2) the number of images involved in the offense, U.S.S.G. § 2G2.2(b)(7).

The defendant argued that even if these enhancements were rational when enacted, they have become irrational over time as changes in technology sweep typical offenders into the enhancements' reach. The panel held that the defendant did not establish that Congress acted irrationally when it directed the enhancements, nor meet his burden to show that changed circumstances have so drastically altered the application of the enhancements to make them irrational today. The panel therefore affirmed the district court's decision that neither enhancement violates the Due Process Clause.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Roger Yang (argued), Assistant United States Attorney, Eastern District of California; Camil A. Skipper, Assistant United States Attorney, Appellate Chief; Phillip A. Talbert, United States Attorney; United States Department of Justice, Office of the United States Attorney, Sacramento, California; for Plaintiff-Appellee.

Kresta N. Daly (argued), Barth Daly LLP, Winters, California, for Defendant-Appellant.

**OPINION**

JOHNSTONE, Circuit Judge:

Congress delegated to the United States Sentencing Commission the power to promulgate sentencing policies and guidelines. *See* 28 U.S.C. § 994(a). But Congress retains ultimate authority to set sentencing policy for federal offenses, including by amending specific guidelines. It has repeatedly wielded this authority over sentencing enhancements for child pornography offenses.

This appeal arises from a due-process challenge to two such Congressionally directed enhancements for (1) using a computer to commit a child pornography offense and (2) the number of images involved in the offense. Commentators, courts, and the Commission itself have criticized these enhancements. They note that because so many child pornography offenses today involve the internet, what began as sentencing enhancements for only the most serious offenses now apply to almost all of them. Despite these changed circumstances, these enhancements rationally relate

to legitimate sentencing interests. The computer-usage enhancement punishes the faster speed of transmitting child pornography by electronic means. The image-number enhancement punishes the broader scope of larger child pornography collections. Generally, each enhancement increases punishment for increasingly harmful conduct, and therefore has a rational basis. We affirm the district court's decision that neither enhancement violates the Due Process Clause.

## I. Sharma facially challenges two child pornography sentencing enhancements.

Dilesh Sharma pleaded guilty to attempted enticement of a minor for sexual purposes, 18 U.S.C. § 2422(b), distribution of child pornography, *id.* § 2252(a)(2), and receipt of child pornography, *id.* The district court determined Sharma's guideline calculation by starting with the prescribed base offense level for each crime. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§ 2G1.3(A)(3), 2G2.2(a)(2) (U.S. Sent'g Comm'n 2023).[1] Then the court made upward adjustments, or enhancements, to the base offense level depending on specific characteristics of the offense conduct. Here, in calculating the guideline range for the child pornography offenses, the court imposed a two-level enhancement under U.S.S.G. § 2G2.2(b)(6)[2] because he used a computer, and a three-

---

[1] The Sentencing Guidelines are now advisory, not mandatory. *See United States v. Booker*, 543 U.S. 220, 246 (2005).

[2] "If the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material, increase by 2 levels." § 2G2.2(b)(6).

level enhancement under U.S.S.G. § 2G2.2(b)(7)[3] because he possessed at least 150 images. [4] Without more, these enhancements could increase a hypothetical defendant's guideline sentence up to three years.

In Sharma's case, after applying other upward and downward adjustments not at issue here, the district court calculated a total offense level of 43. That indicates a life sentence. The district court departed downward from the guideline calculation, and sentenced Sharma to 288 months' imprisonment on the enticement count and 240 months' imprisonment on each of the child pornography counts, all to run concurrently. The court also imposed a life term of supervised release.

Sharma objected to the computer-usage and image-number enhancements on their face under the Fifth Amendment's Due Process Clause. He claimed the enhancements were arbitrary because they apply to nearly all child pornography offenders. The district court rejected

---

[3] "(7) If the offense involved--

> (A) at least 10 images, but fewer than 150, increase by 2 levels;
> (B) at least 150 images, but fewer than 300, increase by 3 levels;
> (C) at least 300 images, but fewer than 600, increase by 4 levels; and
> (D) 600 or more images, increase by 5 levels."

§ 2G2.2(b)(7).

[4] The court also imposed a two-level computer usage enhancement for the enticement offense under U.S.S.G. § 2G1.3(b)(3). Sharma challenges the constitutionality of § 2G1.3(b)(3) on the same due process grounds as the computer-usage enhancement in § 2G2.2(b)(6), so his challenge to § 2G1.3(b)(3) fails for the same reasons his challenge to § 2G2.2(b)(6) fails.

Sharma's objections, explaining that the enhancements were rationally related to legitimate interests. Sharma appeals. We have jurisdiction under 28 U.S.C. § 1291. "[W]e review claims that the Sentencing Guidelines are unconstitutional de novo." *United States v. Kuchinski*, 469 F.3d 853, 857 (9th Cir. 2006).

## II.  The sentencing enhancements each have a rational basis.

The Due Process Clause of the Fifth Amendment guarantees that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Due process of law "requires only that a sentencing scheme be rational and not based on [an] 'arbitrary distinction.'" *United States v. Garner*, 490 F.3d 739, 743 (9th Cir. 2007) (quoting *Chapman v. United States*, 500 U.S. 453, 465 (1991)). Distinctions can have a rational basis even when "based on rational speculation unsupported by evidence or empirical data." *United States v. Navarro*, 800 F.3d 1104, 1114 (9th Cir. 2015) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)). "The defendant[] bear[s] the burden of proving the absence of a rational relationship between [a sentencing guideline] and a legitimate governmental objective." *United States v. Alexander*, 48 F.3d 1477, 1491 (9th Cir. 1995), *as amended on denial of reh'g* (Apr. 11, 1995).

Sharma argues that even if these enhancements were rational when enacted, they have become irrational over time as changes in technology sweep typical offenders into the enhancements' reach. In rational basis review, a "court must ordinarily consider the circumstances at the time of passage." *Burlington N. R.R. Co. v. Dep't of Pub. Serv. Regul.*, 763 F.2d 1106, 1111 n.3 (9th Cir. 1985); *see also* 2

Shambie Singer, *Sutherland Statutes & Statutory Constr.* § 34:5 (8th ed.) (explaining that courts normally do not abrogate statutes merely on the ground that changed conditions have rendered them superfluous).[5] Sharma has not established that Congress acted irrationally when it directed the enhancements, nor met his burden to show that changed circumstances "have so drastically altered" the application of the enhancements to make them irrational today. *Burlington N. R.R. Co.*, 763 F.2d at 1111; *cf. United States v. Jackson*, 84 F.3d 1154, 1161 (9th Cir. 1996) (declining to revisit sentencing law previously held to have a rational basis, "even though it differs from the Sentencing Commission's current recommendation").

## A. The computer-usage enhancement

The Sentencing Guidelines provide a two-level enhancement for "the use of a computer or an interactive computer service" in a child pornography offense. § 2G2.2(b)(6). Nearly thirty years ago, Congress directed the

---

[5] We have observed that "[t]he Supreme Court has been ambivalent on whether changed circumstances can transform a once-rational statute into an irrational law." *Burlington N. R.R. Co.*, 763 F.2d at 1111. Earlier, in establishing modern rational basis review, the Supreme Court noted that "the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist." *United States v. Carolene Prods. Co.*, 304 U.S. 144, 153 (1938). But courts generally do not "step in and say that what was rational in the past has been made irrational by the passage of time," because "at what point does a court say that what once made sense no longer has any rational basis?" *United States v. Then*, 56 F.3d 464, 468 (2d Cir. 1995) (Calabresi, J., concurring); *see also* Allison Orr Larson, *Do Laws Have a Constitutional Shelf Life?*, 94 Tex. L. Rev. 59, 103 (2015) ("Finding a law to have outgrown its rationality," when courts lack authority to "check the factual underpinnings," "should be out of bounds.").

Sentencing Commission to issue this enhancement in the Sex Crimes Against Children Prevention Act. Pub. L. No. 104-71, § 3, 109 Stat. 774, 774 (1995). Legislators intended to prevent child pornography from reaching a limitless audience through the internet. H.R. Rep. No. 104-90, at 3–4 (1995).

Over time, offenders' increasingly frequent use of computers has extended the enhancement's scope. In 1995, only 28% of child pornography cases involved computers. U.S. Sent'g Comm'n, *Sex Offenses Against Children* (1996), at 30, available at https://perma.cc/Z9SV-2AR4. By 2019, the enhancement applied in more than 95% of cases involving the possession, receipt, or distribution of child pornography. U.S. Sent'g Comm'n, *Federal Sentencing of Child Pornography: Non-Production Offenses* (2021) ("2021 Commission Report"), at 4, available at https://perma.cc/PFY3-H26Z.

In a report to Congress, the Commission observed that "most of the enhancements in § 2G.2.2 ... were promulgated when the typical offender obtained child pornography in printed form in the mail." U.S. Sent'g Comm'n, *Federal Child Pornography Offenses* (2012), at iii, available at https://perma.cc/6EDR-5WJ6. According to the Report, by 2012 the enhancement no longer distinguished among offenders because most offenses involved the use of a computer. *Id.* at 313. The Commission concluded that "most stakeholders in the federal criminal justice system consider the nonproduction child pornography sentencing scheme," including the computer-usage and image-number enhancements, "to be seriously outmoded." *See id.* at iii. Sharma, citing the Commission's criticisms, argues that the computer-usage enhancement is not just outmoded but also unconstitutionally irrational.

The computer-usage enhancement was rational when enacted in 1995 and remains rational when applied today. Shortly after the Commission adopted the enhancement, we observed that it "punishes defendants for using a particularly insidious method of acquiring child pornography." *United States v. Fellows*, 157 F.3d 1197, 1202 (9th Cir. 1998).[6] As the Commission itself recognized, "the perpetual nature of the distribution of images on the Internet causes a . . . continuing harm to victims" that "is thus lifelong." 2012 Commission Report at 311. The enhancement is rationally related to the legitimate interest in punishing offenders for perpetrating these harms. *See United States v. Vincent*, 167 F.3d 428, 432 (8th Cir. 1999) (rejecting a due process challenge to the computer-usage enhancement). Though the computer-usage enhancement covers a wide range of offense conduct, the possibility that offenders "of varying degrees of culpability might be subject to the same sentence does not mean that the penalty system . . . is unconstitutional." *Chapman*, 500 U.S. at 467. Sharma does not show that the computer-usage enhancement violates the Due Process Clause.

## B. The image-number enhancement

The Sentencing Guidelines also provide a graduated enhancement scheme based on the number of images an offender possesses. In 2003, Congress directly amended the guidelines to establish tiers ranging from a two-level enhancement for offenders who possess at least ten images

---

[6] In 2004, the Sentencing Commission consolidated § 2G2.4 into § 2G2.2, retaining the computer-usage and image-number enhancements that appeared in both sections before the consolidation. U.S.S.G. App. C. amend. 664 (2004); *United States v. Henderson*, 649 F.3d 955, 962 (9th Cir. 2011).

to a maximum five-level enhancement for those who possess 600 or more images. Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, § 401(i)(1)(B), 117 Stat. 650, 672–73 (2003). Legislators framed the "PROTECT Act" as a response to *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), which invalidated the application of the Child Pornography Prevention Act of 1996 to materials that "convey[] the impression" of or "appear[] to be" child pornography. S. Rep. No. 108-2, at 4, 6 (2003). Congress then amended the PROTECT Act to add the image-number enhancement to the Guidelines with minimal discussion. *See* H.R. Rep. No. 108-48, at 3, 11 (2003); 149 Cong. Rec. H2423 (daily ed. Mar. 27, 2003) (statement of Rep. Feeney) (explaining that the guideline amendments increase penalties "based on the amount of child pornography involved in the offense"); H.R. Conf. Rep. No. 108-66, at 59 (2003). (same).

In its 2012 Commission Report, the Commission criticized the image-number enhancement for not distinguishing between offenders based on their culpability. Again, because "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography," typical offenders today have more than 600 images and therefore receive the maximum five-level enhancement. 2012 Commission Report at iii, 312–13, 321. Soon after the Commission published its report, the Department of Justice recommended that "in light of the technology-facilitated ease of obtaining larger child pornography collections, the numeric thresholds should be substantially increased." Letter from U.S. Dep't of Just. to Chair of the U.S. Sent'g Comm'n, at 4 (March 5, 2013) ("DOJ Letter"). Sharma echoes these criticisms. He also

argues that Congress arbitrarily drew the offense-level lines between the image-number ranges without relying on empirical data. As a result, Sharma argues, the image-number enhancement also is unconstitutionally irrational.

Sentencing requires drawing lines. It is common, and not irrational, to draw those lines based on the quantity of contraband that produces the harms that an offense punishes. So it does not render a sentencing scheme unconstitutional if "the vast majority of cases will . . . do exactly what the sentencing scheme was designed to do—punish more heavily those who deal in larger amounts." *Chapman*, 500 U.S. at 466 (holding, in a due process challenge, that increasing penalties based on the quantities of drugs regardless of their purity "is a rational sentencing scheme," *id.* at 465). As the Commission and Department of Justice acknowledge in the comments Sharma cites, sentencing guidelines should still consider the number of images involved in an offense. *See* 2012 Commission Report at 320, 323; DOJ Letter at 4. "Congress had to draw the line somewhere" to distinguish the largest collections from smaller collections. *Beach Commc'ns, Inc.*, 508 U.S. at 316. It is a legitimate interest to punish more harshly offenders who possess more child pornography. The image-number enhancement, though imperfectly calibrated, is rationally related to that interest. Sharma does not show that the image-number enhancement violates the Due Process Clause.

### III. Sharma's facial constitutional challenge fails.

Although the computer-usage and image-number sentencing enhancements in child pornography offenses may be debatable on policy grounds, those debates are not the concern of a court conducting rational basis review. We ask only if a defendant has established that the enhancements

lack a rational relationship to a legitimate government interest. We hold that Sharma fails to do so here.[7]

**AFFIRMED.**

---

[7] Before the district court, Sharma did not argue that imposing the enhancements would result in a substantively unreasonable sentence under 18 U.S.C. § 3553(a). *See, e.g.*, *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010) (calling § 2G2.2 "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results"); *United States v. Grober*, 624 F.3d 592, 609 (3d Cir. 2010). Nor did Sharma question whether the district court generally could have "depart[ed] from [the Guidelines] based on reasonable policy disagreement." *Henderson*, 649 F.3d at 960. Because Sharma brings only a facial constitutional challenge, we address neither of these issues.